UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA CASTELLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AT&T MOBILITY SERVICES, LLC, | )   **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Lisa Castello, by and through her attorneys, complains of Defendant, AT&T Mobility Services, LLC, as follows.

**NATURE OF ACTION**

1. This is an action brought under the Americans with Disabilities Act and the Family and Medical Leave Act. Plaintiff, a former employee of Defendant, suffered from a variety of disabilities as a result of a stroke and other medical complications following serval surgeries. Among her disabilities were cognitive impairments and memory issues. Because she had been in her assigned position for many years and routinely performed similar, repetitive tasks and duties throughout those years, both before and after the onset of her disabilities, she was nonetheless able to perform her job duties well. She did, however, require numerous extended medical leaves of absence and also required a set intermittent leave once a week to attend both physical and cognitive therapy appointments. Upon returning from yet another extended medical leave of absence, Plaintiff was abruptly told she had been reassigned to an entirely new job in a different department and that another, non-disabled employed was being assigned to her job duties. Concerned about the reassignment because of her disabilities, Plaintiff requested a reasonable accommodation and

provided supporting medical certifications. Defendant took issue with the nature and extent of Plaintiff's limitations as part of her accommodation requests and the issue became protracted and entrenched, with Plaintiff making multiple complaints of discrimination and retaliation. Rather than resolve the disagreement over the requested accommodation through methods sanctioned under the ADA, Defendant instead subjected Plaintiff to a forced interview and investigation by an Asset Protection security officer, to which Plaintiff also objected. Disbelieving the extent of Plaintiff's medical limitations, Defendant then terminated her employment.

## JURISDICTION AND VENUE

2. Jurisdiction is provided by 28 U.S.C. §1331, as the claim involves a violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, and a violation of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.*

3. Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), including an Amended Charge, against Defendant. The EEOC has issued a Notice of Right to Sue and Plaintiff has brought the action within 90 days of its receipt.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

## PARTIES

5. Plaintiff, Lisa Castello, an individual, (hereinafter "Plaintiff"), is a citizen and resident of Cook County, Illinois, and was employed by Defendant.

6. Defendant, AT&T Mobility Services, LLC (hereinafter "Defendant"), a foreign limited liability company incorporated in Delaware, regularly conducts business throughout the State of Illinois, including from its offices in Schaumburg, Illinois.

7. At all times relevant hereto, Defendant was a covered employer under the Americans with Disabilities Act ("ADA") and Family and Medical Leave Act ("FMLA").

## FACTUAL ALLEGATIONS

8. Plaintiff began her employment with Defendant as an independent contractor in 2009 as a Leasing Specialist.

9. In January 2013, Plaintiff transitioned to an employee for Defendant as an Associate Network Procurement and Quality Manager in the Construction & Engineering Department. This role was a continuation of her original role and duties as a Leasing Specialist, and her job will be referred to throughout as a Leasing Specialist.

10. As a Leasing Specialist, Plaintiff was tasked with various administrative, repetitive duties, such as abstracting, drafting, notarizing and reviewing real estate agreements.

11. Throughout her employment, Plaintiff performed her job in an excellent manner and received many accolades from supervisors regarding her work performance and dedication.

12. Due to complications arising from a 2011 surgery, Plaintiff suffered a stroke in 2013, and has since been forced to undergo multiple corrective surgeries, including open heart surgery.

13. As a result of the multiple surgeries and procedures Plaintiff endured, she suffers from a lack of vision in her left eye, struggles to articulate her thoughts, has difficulty learning new material, suffers from memory issues, and has been left with a weakened left side of her body.

14. Plaintiff had previously maintained the same job duties since beginning with Defendant in 2009. Because she maintained the same job duties, she was able to continue on in her position as a Leasing Specialist successfully and without issue, even as she developed cognitive impairments.

15. Throughout her employment with Defendant, because of her condition, Plaintiff required ongoing treatment, including outpatient treatments, weekly physical and cognitive therapy, and multiple medications.

16. Additionally, Plaintiff required multiple medical leaves of absences in order to treat her various conditions, and throughout the course of her employment with Defendant, required as many as eight periods of extended or intermittent FMLA leave since 2013.

17. Upon her return from her extended medical leaves, Plaintiff felt singled out and as if her job had been taken away from her because of the conduct and comments of her supervisor, Kim Coleman.

18. When Plaintiff returned from extended FMLA leave taken to recover from open-heart surgery, Ms. Coleman accused Plaintiff of being "different" and on drugs, and further threatened to issue her discipline.

19. Ms. Coleman further told Plaintiff that she was "too sick to do the job," after she returned from an FMLA leave.

20. Plaintiff protested these comments to Robert Strauch, Director of Mobility Construction & Engineering, but her protests went ignored.

21. In late September 2016, Plaintiff was again required to take an extended period of FMLA leave in order to deal with her ongoing medical issues.

22. Prior to leaving, there had been no mention to Plaintiff that a transfer was being considered or that her role with Defendant would change when she returned.

23. On November 8, 2016, upon return from a yet another extended medical leave, without notice or explanation, Plaintiff was informed that she was to be transferred from her position as a Leasing Specialist to a position in Import/Export.

24. Plaintiff was not told why she was being transferred nor who had ordered the transfer.

25. Because of Plaintiff's medical conditions, she was concerned she would be unable to perform the duties of the Import/Export position, as she had no experience in that field and as the functions of that position were wholly separate from her duties as a Leasing Specialist.

26. Defendant was previously made aware of Plaintiff's cognitive impairment, as she had made known her need to attend regularly scheduled cognitive therapy and her visits to her neurologist.

27. Plaintiff explained to Defendant that she believed the transfer was outside of her capabilities due to her disabilities resulting from her medical conditions.

28. By November 10, 2016, Plaintiff had formally requested an accommodation and provided the required medical documentation.

29. Plaintiff provided Defendant with a certification from her doctor, which specified that she has impaired mental function due to her stroke and cognitive impairments, and recommended an accommodation of maintaining her current duties and to not be given new and unfamiliar tasks.

30. On November 16, 2016, Defendant's Claims Management Service informed Plaintiff and Angelo Sopikiotis, Area Manager, that her request was medically supported and that the requested accommodation would be communicated to her supervisors. Plaintiff informed her supervisors of the same.

31. Meanwhile, however, that same day Plaintiff was instructed by Mr. Sopikiotis that Kim Evans would be taking over Plaintiff's position and that all work from her Leasing Specialist role should be transferred to Ms. Evans; on information and belief, Ms. Evans is not a disabled

employee.

32. Receiving conflicting information from all sides, Plaintiff called Defendant's telephone hotline on November 17, 2016, to report what she believed to be FMLA retaliation and a failure to accommodate her disability, as she explained that she was transferred immediately upon return from FMLA leave and that her supervisors failed to accommodate her disability.

33. Later that day, on November 17, 2016, Plaintiff discussed her disability limitations with Donna Zang (Employee Relations Manager), Chris Bondurant (Vice President), and Robert Strauch, among others.

34. Plaintiff explained that she was unable to perform the new duties of Import/Export because of her disabilities and medical conditions, and accused Defendant of ignoring her doctor's clear instructions by putting her in the new and unfamiliar position.

35. In response, Defendant informed Plaintiff that "legal counsel advised us we reserve the right to move you," regardless of her request for an accommodation or recent FMLA leave.

36. Plaintiff protested the transfer, claiming that this was harassment and retaliation for her medical leave and that she had been given no notice.

37. Plaintiff again contacted Defendant's hotline the next day, recounted the events of the previous day's meeting, and reiterated that she was unable to take the new position.

38. On November 22, 2016, Defendant informed Plaintiff that her accommodation request was set to be "closed" and that it would be moving forward with the transfer.

39. Defendant neither consulted with, nor attempted to contact, Plaintiff's doctor in its decision to transfer her.

40. Again concerned she would be unable to perform the duties of Import/Export because of her limitations, Plaintiff reiterated to Ms. Zang that she was unable to perform the duties

6

"because it does not meet the criteria of [her] doctor."

41. On November 23, 2016, Ms. Zang instructed Plaintiff to keep performing her current duties while the accommodation request was evaluated.

42. On December 1, 2016, Plaintiff again inquired as to the status of her accommodation and was informed that there was no update.

43. On December 5, 2016, Plaintiff found out that vendors and coworkers had been instructed "not to engage [her] anymore."

44. Plaintiff reported this to Ms. Zang, and complained that this was retaliation and prevented her from doing her job.

45. On December 12, 2016, because she had not yet received a response regarding her request made weeks prior, Plaintiff contacted Mariela Hughes, Manager-Job Accommodations, explaining that "[t]he lack of communication regarding [her] Job Accommodation… has been very confusing, frustrating, and most of all has caused undue mental and physical angst." Plaintiff also noted that she had not been involved in the process of providing an accommodation, and that her "next step is to go to the … EEOC."

46. Plaintiff further explained that she had just returned from FMLA leave, and that she was being replaced by another individual who "does not have job accommodation limitations."

47. On December 14, 2016, Ms. Hughes informed Plaintiff that her accommodation request was still under review and that she was to remain in her regular position for the time being.

48. Plaintiff received no further information for an additional three weeks.

49. During this period, Plaintiff's building access and badge authorization was terminated, which, on December 21, 2016, Plaintiff protested to Ms. Hughes as another form of retaliation.

50. Then, on January 3, 2017, three months after her request for an accommodation, Plaintiff was ordered to report to a meeting with an Asset Protection security officer.

51. During this meeting, the Asset Protection security officer interrogated Plaintiff about her disability and accommodation request.

52. Disbelieving the extent of Plaintiff's medical limitations, the security officer demanded to know why Plaintiff "can't function and would not be able to do the accommodation alternative that [Defendant] ha[d] given [her]."

53. Throughout the interrogation, Plaintiff repeatedly complained that she felt intimidated, explained that she did not believe this interrogation was right, voiced her need to attend her scheduled doctor's appointment, and attempted to leave.

54. Even after her repeated requests, Defendant refused to permit Plaintiff to leave in order to attend her medical appointment.

55. When the interrogation was over, Plaintiff insisted on leaving work to attend a medical appointment necessary for her continuing treatment. Immediately, as she was leaving to attend her appointment, Mr. Sopikiotis told her that she was suspended.

56. On January 4, 2017, Plaintiff again requested an update regarding the status of her request for an accommodation. She received no response but was instructed by Mr. Sopikiotis to report back to the office the following day.

57. On January 5, 2017, Plaintiff was again forced to meet with an Asset Protection security officer, in addition to her supervisor, Mr. Sopikiotis, who explained to Plaintiff that she had been suspended because she went to her doctor's appointment and "disrupted" an investigation.

58. Plaintiff was not informed when she would be permitted to return to work but

8

instead, for the rest of the day, was made to wait at her desk, without any duties or assignments, until the end of the day when she was told she was now being suspended pending an investigation. She was not told what the investigation concerned, nor for how long she was to be suspended.

59. Plaintiff again sought clarification on the status of her accommodation request on January 9, 2017. She again received no response.

60. On January 11, 2017, Plaintiff was instructed by Vice President Bondurant that her "job accommodation issue had been going on for too long" and that she must report to his office the next day with her employee identification badge and her work-issued laptop computer.

61. On January 12, 2017, Plaintiff reported to the office and was immediately terminated.

62. Plaintiff filed her Charge of Discrimination with the EEOC on February 17, 2017.

63. After the Charge's filing, Defendant continued to retaliate against Plaintiff.

64. Because of her cognitive impairment, Plaintiff experienced difficulty in finding a new position.

65. Six months after her termination from Defendant, Plaintiff acquired a new job with one of Defendant's vendors that required the same functional job duties she had performed as Leasing Specialist.

66. Plaintiff's newly-acquired job was virtually the identical position she had maintained with Defendant, as Defendant had contracted out this work to a different company, where Plaintiff was now employed.

67. In order to perform her duties at her new job, as she did with her old job, Plaintiff required access to Defendant's computer system. This access was routinely provided by Defendant to the new employees of the vendor.

9

68. Defendant blocked Plaintiff's access to this system, which made it impossible for Plaintiff to conduct her job duties for the new employer, who then terminated Plaintiff's employment.

## COUNT I
## DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILTIES ACT

69. Plaintiff realleges Paragraph 1 through 68 and incorporates them as though fully set forth herein.

70. Title I of the Americans with Disabilities Act, specifically 42 U.S.C. §12101 *et seq*., makes it unlawful to discriminate against an employee on the basis of an employee's disability, because of a record of disability, or because the employer regards the employee as suffering from a disability.

71. Title I of the Americans with Disabilities Act, specifically 42 U.S.C. §12101 *et seq*., also makes it unlawful to retaliate against any employee who has asserted rights under, and/or opposed an unlawful employment practice under, the Act.

72. By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiff on the basis of her disability as Defendant, *inter alia*, transferred her into a job she was likely unable to perform, assigned Asset Protection to interrogate her regarding her disability, suspended her for attending a doctor's appointment, and ultimately terminated her from employment.

73. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination and retaliation.

74. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

75. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count I as follows:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended;

b) Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c) Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Reinstate Plaintiff to her previous position;

f) Award Plaintiff damages for emotional distress and compensatory damages;

g) Award Plaintiff punitive damages;

h) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

i) Enjoin Defendant and all officers, agents, employee, and all persons in active concert or participation with it from engaging in any unlawful employment practice;

j) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

k) Award Plaintiff any and all other relief as the Court deems just in the premises.

### COUNT II
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT

76. Plaintiff realleges paragraphs 1 through 68 and incorporates them as if fully set forth herein.

77. Title I of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, as amended, makes it unlawful for an employer to fail to accommodate an employee's disability.

11

78. By its conduct as alleged herein, Defendant failed to accommodate Plaintiff's disabling physical condition.

79. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's rights to be free from impermissible disability discrimination.

80. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

81. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her and against Defendant on Count II as follows:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended;

b) Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c) Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Reinstate Plaintiff to her previous position;

f) Award Plaintiff damages for emotional distress and compensatory damages;

g) Award Plaintiff punitive damages;

h) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

i) Enjoin Defendant and all officers, agents, employee, and all persons in active concert or participation with it from engaging in any unlawful employment practice;

j) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

k) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT III
## DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

82. Plaintiff re-alleges paragraphs 1 through 68 and incorporates them as though fully set forth herein.

83. The Family and Medical Leave Act, specifically 29 U.S.C. §2615, makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for exercising rights under the FMLA.

84. Additionally, the Family and Medical Leave Act, specifically 29 U.S.C. §2614, mandates that an employee must be returned to the position of employment previously held, or to an equivalent position.

85. As set forth above, Plaintiff engaged in protected activity under the FMLA, including her repeated exercise of leave.

86. By its conduct alleged herein, Defendant violated the FMLA by discriminating and retaliating against Plaintiff for her exercise of rights.

87. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's rights under the FMLA.

88. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count III as follows:

a) Declare that Defendant's conduct was in violation of the Family and Medical Leave Act;

b) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in unlawful employment practices under the FMLA;

c) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and

practices consistent with the FMLA to provide equal employment opportunities for all and to prevent retaliation;

d) Reinstate Plaintiff to her previous position;

e) Award Plaintiff the value of all compensation lost and benefits lost as a result of Defendants' unlawful conduct;

f) Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

g) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

h) Award Plaintiff liquidated damages;

i) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

j) Award Plaintiff any and all other relief as the Court deems just in the premises.

Respectfully submitted,
LISA CASTELLO


/s/ John P. Madden
Attorney for the Plaintiff


John P. Madden
Abigail R. Durkin
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
jmadden@ompc-law.com
Atty No. 6243400